1  MARC E. MAYER (SBN 190969)
      mem@msk.com
2  KARIN G. PAGNANELLI (SBN 174763)
      kgp@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone:   (310) 312-2000
5  Facsimile:   (310) 312-3100

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11 UBISOFT, INC., a corporation existing     CASE NO.  2:19-cv-9132
   under the laws of California,
12                                           **COMPLAINT FOR:**
              Plaintiff,
13                                           **(1)  TRAFFICKING IN**
        v.                                   **CIRCUMVENTION**
14                                           **TECHNOLOGY, 17 U.S.C. § 1201**
   J.V.L., a/k/a SMBB, KOKUJIN, and          **ET SEQ.;**
15 MRGAMEBOY, an individual;
   SANDRA RIJKEN d/b/a SIMPLY                **(2)  INTENTIONAL**
16 SAN WEBDESIGN, an individual;             **INTERFERENCE WITH**
   MIZUSOFT LTD., an entity of               **CONTRACTUAL RELATIONS;**
17 unknown form; DOE 1 a/k/a
   SKULLMEME; DOE 2 a/k/a YUSUF;             **(3)  UNFAIR COMPETITION**
18 DOE 3 a/k/a EMRETM, and DOES 4
   through 10, inclusive,
19                                           **DEMAND FOR JURY TRIAL**
              Defendants.
20

21

22

23

24

25

26

27

28

11562145.1

Ubisoft, Inc. ("Ubisoft") avers as follows:

## **PRELIMINARY STATEMENT**

1.     Ubisoft is one of the world's most prominent publishers of high-quality video games and interactive entertainment products.  Ubisoft's products include some of the most popular video games ever created, such as games in the Assassin's Creed, Far Cry, and Tom Clancy franchises.  Ubisoft's Tom Clancy games encompass more than a dozen military action games, including the bestselling multiplayer game Tom Clancy's Rainbow Six: Siege ("R6S").  By this lawsuit, Ubisoft seeks to protect its valuable intellectual property from being unfairly and unlawfully exploited by a group of unscrupulous hackers and profiteers who seek to harm Ubisoft's games, and R6S in particular, for their own personal financial benefit.

2.     Defendants are the founders and operators of a business enterprise formerly known as "CheapBoost," and now known as "MizuSoft."  MizuSoft describes itself as "a leading cheat provider" and "a company that focuses on creating easy to use and undetected cheating software."  Defendants and those working in concert with them have sought to unlawfully and unfairly enrich themselves by creating, selling, distributing, maintaining, servicing, supporting, and updating malicious software products that are specifically designed to (and have no other purpose but to) enable their users to cheat at R6S, at the expense of Ubisoft and its legitimate customers.  MizuSoft's only product, titled "Budget Edition Rainbow Six: Siege Cheat" (the "Cheating Software"), is a software tool that enables its users to manipulate R6S to their personal advantage, such as by increasing the damage inflicted by the player, changing the player's perspective, and allowing the player to see areas of the battlefield that otherwise would be obscured.  Defendants reportedly receive thousands of dollars each month from the sale of licenses for the Cheating Software, to the detriment of Ubisoft.

Mitchell
Silberberg &
Knupp LLP

2

11562145.1

3.     Defendants' conduct has caused, and is continuing to cause, massive and irreparable harm to Ubisoft and its business interests.  Ubisoft's business depends upon its games being enjoyable and fair for all players, and Ubisoft spends an enormous amount of time and money to ensure that this is the case.  The Cheating Software destroys the integrity of R6S, thereby alienating and frustrating legitimate players.  Defendants' sale and distribution of the Cheating Software, especially in the United States, has caused severe harm to Ubisoft, including irreparable damage to its goodwill and reputation.  Defendants are well aware of the harm that the Cheating Software causes to Ubisoft.  In fact, Defendant J.V.L.[1] recently bragged to the media that his Cheating Software ruins R6S for other players.  He also readily admitted that if he were to be sued by Ubisoft he would have a "tough time" defending his conduct.

4.     By creating, marketing, selling, servicing, and distributing the Cheating Software, Defendants have engaged in (and continue to engage in) numerous unlawful acts under United States and California law.  Defendants have violated Section 1201 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(b)(1), by selling, importing, offering, providing, and otherwise trafficking in technologies that circumvent or evade anti-cheat technologies used by Ubisoft to protect the integrity of R6S.  Defendants also have knowingly, intentionally, and maliciously induced Ubisoft customers in the United States to breach their contracts with Ubisoft, including contracts that explicitly prohibit them from engaging in the precise type of cheating that Defendants enable by their Cheating Software.  As shown by their public statements, Defendants not only know that their conduct is unlawful, but they engage in that conduct with the deliberate intent to harm Ubisoft and its business.  Ubisoft is entitled to monetary

[1] On information and belief, as of the date of this filing Defendant J.V.L. is a minor.  Pursuant to Fed. R. Civ. P. 17(c), the summons for this Complaint will be filed under seal and the minor's address redacted from the certificate of service, and service of process will be made on the minor's mother, Sandra Rijken.

1  damages, injunctive and other equitable relief, and punitive damages against

2  Defendants.

3

4  **JURISDICTION AND VENUE**

5      5.      This is a civil action seeking damages, injunctive relief, and other

6  equitable relief under the anti-circumvention provisions of the DMCA, 17 U.S.C.

7  § 1201 *et seq.*; and the laws of the State of California.

8      6.      This Court has subject matter jurisdiction over Ubisoft's claims for

9  violation of the DMCA (17 U.S.C. § 1201 *et seq.*) pursuant to 28 U.S.C. §§ 1331

10  and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental

11  jurisdiction over Ubisoft's state law claims for intentional interference with

12  contract and unfair competition, which are so related to Ubisoft's claims under the

13  DMCA as to be part of the same case or controversy.

14      7.      This Court has personal jurisdiction over Defendants because they

15  have purposefully directed their activities at the United States, and at California in

16  particular, have purposefully availed themselves of the benefits of doing business

17  in California, and have established a continuing presence in California.  Ubisoft is

18  informed and believes, and on that basis alleges, that, without limitation:

19          (a)      Defendants conduct extensive and ongoing business with users

20  in the United States and the State of California;

21          (b)      Defendants distribute the Cheating Software in the United

22  States and the State of California, advertise and market the Cheating Software in

23  the United States and the State of California, and communicate directly with users

24  in the United States and in the State of California, including for the purposes of

25  soliciting purchases of the Cheating Software by such users and providing

26  technical support for the Cheating Software;

27          (c)      Defendants have directed their unlawful activities at Ubisoft,

28  knowing and intending that Ubisoft would be harmed by their conduct in the

Mitchell
Silberberg &
Knupp LLP

4

11562145.1

United States and primarily in California, where Ubisoft has a significant business presence (in fact, Defendants specifically advertise the Cheating Software as being made for Ubisoft's games);

(d)     Defendants have entered into, and continue to enter into, contracts with individuals in the United States and in the State of California, including contracts pursuant to which such individuals license from Defendants the right to install and use the Cheating Software.  In return for such licenses, Defendants receive ongoing and recurring daily, weekly, or monthly payments from individuals in the United States and the State of California; and

(e)     Defendants contract with entities located in the United States and the State of California in connection with their business.  This includes, for example, domain name registries, hosting or content delivery services, and credit card processors and merchant banks.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Ubisoft's injury was suffered.

**THE PARTIES**

9.     Ubisoft is a corporation duly organized and existing under the laws of California.  Ubisoft is the publisher of, and owner of certain exclusive rights in, the immensely popular online game Rainbow Six: Siege ("R6S").

10.     Ubisoft is informed and believes, and on that basis alleges, that Defendant J.V.L. is a minor individual residing in Zoetermeer, Netherlands. Ubisoft is informed and believes that J.V.L. publicly purports to be the "co-founder and developer at MizuSoft Ltd." and "in charge of developing and maintaining current (and future) MizuSoft products."  As such, J.V.L. is the driving force behind MizuSoft and is the person chiefly responsible for creating, producing, maintaining, marketing, advertising, supporting, and monetizing the Cheating

Mitchell
Silberberg &
Knupp LLP

11562145.1

1  Software.  Ubisoft is informed and believes, and on that basis alleges, that
2  Defendant Sandra Rijken is J.V.L.'s mother and general guardian.

3       11.    Ubisoft is informed and believes, and on that basis alleges, that
4  Defendant Sandra Rijken is an individual residing in Zoetermeer, Netherlands, and
5  does business as "Simply san webdesign."  Ubisoft is informed and believes
6  Rijken, including through her company, is responsible for collecting, processing,
7  and transmitting to one or more of the other Defendants payments made by
8  MizuSoft's customers for the Cheating Software.

9       12.    Ubisoft is informed and believes, and on that basis alleges, that
10  defendant MizuSoft Ltd. is an entity whose form currently is unknown to Ubisoft.
11  Ubisoft is informed and believes, and on that basis alleges, that MizuSoft is the
12  alter ego of J.V.L. and/or Rijken and that J.V.L., Rijken, and MizuSoft have a
13  unity of interest and ownership such that the separate personalities of the entity and
14  the person cease to exist, and that MizuSoft was created for the express purpose of
15  shielding J.V.L. and Rikjen from the legal consequences resulting from their
16  creation and distribution of the Cheating Software.

17       13.    Ubisoft is informed and believes, and on that basis alleges, that
18  defendant Doe 1 a/k/a Skullmeme, Doe 2 a/k/a Yusuf, and Doe 3 a/k/a EmreTM
19  provide technical and customer support for the Cheating Software and are the
20  moderators of message boards and other online platforms through which customers
21  of the Cheating Software communicate with Defendants.  Among other activities,
22  Skullmeme, Yusuf, and EmreTM assist customers in operating the Cheating
23  Software, give advice to customers as to how to avoid being caught or detected by
24  Ubisoft for using the Cheating Software, and communicate to users about updates
25  and improvements to the Cheating Software.  The true names and capacities,
26  whether individual, corporate, associate, or otherwise, of Skullmeme, Yusuf, and
27  EmreTM are unknown to Ubisoft, which has therefore sued said defendants by
28  such fictitious names.

Mitchell
Silberberg &
Knupp LLP

6

11562145.1

14.     Ubisoft is informed and believes, and on that basis alleges, that Does 4, 5, and 6 use the following names on the chat platform Discord:  SanaSana#1684, Synotic#9666, and Hide OnPhanto#9983 are "resellers" of the Cheating Software. As such, SanaSana#1684, Synotic#9666, and Hide OnPhanto#9983 assist the other Defendants in marketing and selling the Cheating Software.  The true names and capacities, whether individual, corporate, associate, or otherwise, of SanaSana#1684, Synotic#9666, and Hide OnPhanto#9983 are unknown to Ubisoft, which has therefore sued said defendants by such fictitious names.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 7 through 10 are unknown to Ubisoft, which has therefore sued said defendants by such fictitious names.  These defendants include individuals whose real identities are not yet known to Ubisoft, but who are acting in concert with one another, often under the guise of Internet aliases, in committing the unlawful acts alleged herein.  Ubisoft will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained.  Ubisoft is informed and believes, and on that basis avers, that all defendants sued herein are liable to Ubisoft as a result of their participation in all or some of the acts set forth in this complaint.  (All of the aforementioned defendants collectively are referred to herein as "Defendants.")

16.     Ubisoft is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things averred in this complaint, was acting within the course and scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS
### Ubisoft And R6S

17.     Ubisoft is a video game publisher, engaged in the business of marketing and distributing high-quality software game products (the "Ubisoft

Mitchell
Silberberg &
Knupp LLP

11562145.1

Games") in the United States.  Among Ubisoft's most popular games is Tom Clancy's Rainbow Six: Siege ("R6S").  Ubisoft is the owner of certain exclusive rights of valid and subsisting copyrights in R6S and all of its expansions and add-ons.

18.     R6S, initially released on December 1, 2015, is a team-based, online multiplayer, military-themed "first person shooter" ("FPS") game.  In R6S, players assume the role of an elite special forces operative.  The player must work with other team members, and against a competing team, to complete objectives such as rescuing hostages, diffusing bombs, or securing a biohazard container.  To accomplish these objectives, players must cooperate and communicate with their team members, each of which brings a particular skill set to the overall team.  R6S players may play the game either "casually" or in competitive "ranked" matches where their success or failure affects their overall standing in the community.

19.     The success of R6S rests in part on Ubisoft's ability to offer a consistently compelling player experience so that its customers remain invested in the game and play it for a sustained period of time.  R6S is a highly competitive, skill-based game with a fixed set of rules that have been carefully designed to ensure that all players stand on equal footing and have a fair chance to defeat their opponents and progress in the game.  Maintaining proper game balance is absolutely critical to the game's success.  Thousands of hours have been spent by Ubisoft to ensure that the game is fair and fun to play.  If that balance is artificially upset, or if there is a perception that some players are cheating or have an unfair advantage, then players will grow frustrated with the game and stop playing.  That, in turn, could disrupt the entire R6S community and cause the game to wither and die.

Mitchell
Silberberg &
Knupp LLP

11562145.1

8

**Ubisoft's Efforts To Protect Its Games**

20.     Because R6S is so popular, unscrupulous individuals and companies such as Defendants constantly seek to exploit the game for their own personal gain and profit, knowing that by doing so they are ruining the experience for other players and harming Ubisoft and its business interests.  For this reason, Ubisoft seeks to protect the integrity the game through both technical and contractual means.

21.     First, in order to protect its games, including R6S, from cheating or unauthorized exploitation, Ubisoft employs a variety of anti-cheat technologies. These anti-cheat technologies are designed to detect when players are using software that allows them to cheat in the game and to prevent unauthorized access to the Ubisoft Games by those players.  As a result, for any hack or cheat software to be effective, it must be specifically designed to prevent or avoid detection by Ubisoft's anti-cheat technologies, such as by concealing itself or by disabling the anti-cheat technology.

22.     Second, in order to access, download, or play R6S, users must create and register an account with Ubisoft and in doing so must expressly manifest their assent to the "Ubisoft Terms of Use" and End-User License Agreement (the "TOU"), and the "Rainbow Six: Siege Code of Conduct" (the "Code of Conduct"). The entire text of the TOU is displayed to users at the time they are asked to assent to its terms and also is made available to members of the public at https://legal.ubi.com/termsofuse/en-US.  The Code of Conduct is incorporated by reference in the TOU and made available to members of the public at https://rainbow6.ubisoft.com/siege/en-us/news/152-326395-16/rainbow-six-siege-code-of-conduct.

23.     The TOU includes a conditional, limited license agreement between Ubisoft and its users.  Under the TOU, Ubisoft licenses the right to download, copy, install, and play the Ubisoft Games, subject to certain terms, restrictions, and

1  conditions.  Among other provisions, the Ubisoft End User License Agreement

2  expressly states that, as a condition to the limited license:  "You undertake not to

3  directly or indirectly…

4  ●  modify, distort, block, abnormally burden, disrupt, slow down and/or

5  hinder the normal functioning of all or part of the Services, or their accessibility to

6  other Users, or the functioning of the partner networks of the Services, or attempt

7  to do any of the above…

8  ●  create, use and/or circulate "auto" or "macro" computer programs or

9  other cheat programs or software applications, and/or use the Services via a mirror

10  site;

11  ●  "bot", "hack", "mod", "trainer", or "crack", or otherwise attempt to

12  circumvent any access control, copyright protection or license-enforcement

13  mechanisms associated with or related to the Services…"

14  24.  The Code of Conduct also expressly forbids "[a]ny conduct which

15  interrupts the general flow of Gameplay in the Game client, forum, or any other

16  Ubisoft medium," "[a]ny attempt to edit, corrupt or change Game or server code,"

17  and "use of third-party hacking, cheating or botting clients."

18  25.  R6S is made available to the public exclusively through dedicated

19  servers maintained by Ubisoft or its partners.  It is not possible for a user to

20  lawfully obtain access to or play R6S without expressly consenting to the TOU and

21  Code of Conduct.

22

23  **Defendants And Their Unlawful Conduct**

24  26.  Defendants describe themselves as "a company that focuses on

25  creating easy to use and undetected cheat software."  In fact, Ubisoft is informed

26  and believes, and on that basis alleges, that Defendants' entire business is

27  dedicated to creating, producing, marketing, distributing, and supporting the

28  Cheating Software – which can be used only to cheat in R6S.  Thus, Defendants'

Mitchell
Silberberg &
Knupp LLP

11562145.1

10

1   business is wholly parasitic in nature and is entirely dependent upon causing harm

2   to Ubisoft and its multiplayer community.

3        27.    The Cheating Software is advertised by Defendants as a tool for

4   "cheaters who do not want to be too obvious that they are cheating in-game."

5   More specifically, the Cheating Software purports to enable R6S players to cheat

6   in the game by, *inter alia*, increasing the damage dealt by a player's weapon,

7   expanding a player's field of vision, illuminating opponents, and displaying

8   information such as the locations and health status of hidden or obscured

9   opponents.  When the Cheating Software is obtained by a user and launched on his

10   or her computer, it presents a user interface by which a user may activate or adjust

11   certain in-game features, such as the amount of recoil applicable to a player's

12   weapon, the specific glowing color opponents will appear as on the player's user

13   interface, and whether to show a radar or whether to reveal the location of both

14   hostiles and friendly players.

15        28.    Depicted below is a screenshot of a player utilizing the Cheating

16   Software in R6S.[2]  Some of the advertised features of the Cheating Software,

17   including the use of *ESP* (Extra Sensory Perception) which allows players to see

18   objects, non-player characters, and opponents (including player names and health

19   information) through walls and other terrain; *Chams*, which causes other players

20   and objects on the battlefield to glow; and the field of vision modifier are visible.



---

[2] *See also* OWNEDCORE, *MizuSoft.net Rainbow Six: Siege Cheats*, https://www.ownedcore.com/forums/mmo-trading-market/fps-buy-sell-trade/791809-mizusoft-net-rainbow-six-cheats-esp-nsnr-chams-more.html (last visited Oct. 15, 2019).

29.     Ubisoft is informed and believes, and on that basis alleges, that Defendants sell licenses to use the Cheating Software via their dedicated website, www.mizusoft.net (the "MizuSoft Website") for a recurring subscription fee of 11.99 Euros (approximately $13.22) per day, 29.99 Euros (approximately $33.06) per week, or 69.99 Euros (approximately $77.15) per month.  Ubisoft is informed and believes, and on that basis alleges, that users may purchase licenses directly from the MizuSoft Website by making payment to or through "Simply San Webdesign" using the San Francisco-based payment processor Stripe. Additionally, Defendants authorize other individual "resellers" to sell licenses for the Cheating Software to members of the public who do not wish to use the Stripe system.  These "resellers" include individuals using the following names on the "Discord" chat platform:  SanaSana#1684, Synotic#9666, and Hide OnPhanto#9983.  These individuals are named as Doe defendants in this action.

30.     Ubisoft is informed and believes, and on that basis alleges, that the Cheating Software has been downloaded and used by R6S players thousands of times.  Ubisoft also is informed and believes that Defendants have made hundreds of thousands of dollars from their distribution of, and sale of licenses to, the Cheating Software.

31.     In addition to providing the Cheating Software itself, Defendants provide extensive and ongoing customer support and technical assistance.  On the MizuSoft Website, Defendants advertise that "[o]ur vision is that you should invariably receive the best experience possible all round.  As a result, our staff is online 24/7 to support you with setting up and utilizing our cheat."  Defendants, including Doe Defendants Yusuf, Skullmeme, and EmreTM regularly post to message boards and online chats maintained on the MizuSoft Website or on the online "chat room" system known as "Discord."  Using anonymous online aliases, Defendants regularly communicate with customers of the Cheating Software on a variety of topics related to the Cheating Software, such as how to avoid being

Mitchell
Silberberg &
Knupp LLP

11562145.1

1  caught by Ubisoft for using the Cheating Software, the status of updates or

2  "patches" to the Cheating Software, how to resolve technical issues, and how to

3  purchase and extend licenses for the Cheating Software.  The Discord chat rooms

4  also include discussion of Ubisoft's enforcement activities, including whether

5  players have been "banned" (i.e. lost R6S account privileges) by Ubisoft and what

6  do to in the event a player is caught using the Cheating Software.

7         32.    Ubisoft is informed and believes, and on that basis alleges, that in

8  order for the Cheating Software to operate with R6S it necessarily includes

9  technology that primarily is designed to avoid, bypass, evade, or otherwise

10  circumvent Ubisoft's anti-cheat technologies.  Defendants also specifically and

11  aggressively advertise and promote the Cheating Software as having been designed

12  for this unlawful purpose.  For example, on the MizuSoft Website, Defendants

13  claim that "the key thing that makes us stand out from the rest is our near clean

14  detection record" and "[w]e are deadset on keeping our cheat undetected and

15  therefore prevent your account from being banned."  Defendants know that

16  trafficking in circumvention products such as the Cheating Software is unlawful

17  and violates Section 1201 of the DMCA.  As J.V.L. admitted on a BBC news

18  segment: "if Ubisoft decides to come after you because of copyright infringement

19  then you're in for a tough time."[3]

20         33.    Each time a R6S player uses the Cheating Software to cheat in R6S,

21  he or she violates the TOU and Code of Conduct.  Accordingly, Ubisoft is

22  informed and believes, and on that basis alleges, that as a result of Defendants'

23  conduct, thousands or tens of thousands of breaches of these contracts have

24  occurred.  Defendants not only are fully aware that the use of the Cheating

25  Software violates the TOU and Code of Conduct, but they know and intend that

26
27

[3] Joe Tidy, *The cheat hackers 'ruining' gaming for others*, BBC NEWS (Sept. 9, 2019), https://www.bbc.com/news/av/technology-49740155/the-cheat-hackers-ruining-gaming-for-others?SThisFB&fbclid=IwAR3tOEDfNiY8ahY3cREY32HeYYn5EmBqKXJq9st6CYMIiwj2EczJrMYNrBU.

28

1    their customers do so.  Indeed, the Cheating Software has no purpose or function

2    other than to enable players to violate the TOU by using "third party hacking or

3    cheating" software.  It is for that reason as well that Defendants take great pains to

4    ensure that Ubisoft cannot detect the use of the Cheating Software by Defendants'

5    customers.  In this way, Defendants work to ensure that their customers continue to

6    receive the benefits of their contracts with Ubisoft while they simultaneously

7    engage in continuing breaches of their obligations under these contracts.

8         34.    By their conduct, Defendants have caused and continue to cause

9    serious harm to the value of Ubisoft's games and to Ubisoft's online community.

10   Such harm is immediate, massive and irreparable, and includes (but is not limited

11   to) the following:

12        (a)    Defendants irreparably harm the ability of Ubisoft's legitimate

13   customers in the United States to enjoy and participate in the online experience

14   carefully created by Ubisoft.  That, in turn, causes users to grow dissatisfied with

15   R6S, lose interest, and stop playing.

16        (b)    Defendants' conduct has forced Ubisoft to spend enormous

17   sums of money (and vast amounts of time) attempting to remediate the damage

18   caused by the Cheating Software.  This includes creating and releasing new

19   versions of R6S that counteract the Cheating Software, responding to player

20   complaints, employing personnel to police the games to detect the use of the

21   Cheating Software, and "banning" (i.e., permanently deleting the accounts of)

22   users who are using the Cheating Software.

23        (c)    Defendants' conduct harms Ubisoft's reputation and results in

24   the loss of significant customer goodwill, in the United States and worldwide.

25        35.    Defendants' conduct has resulted in damage to Ubisoft in an amount

26   to be proven at trial.  Additionally, unless and until Defendants are preliminarily or

27   permanently enjoined, Ubisoft will continue to suffer severe harm from the

28   Cheating Software.

Mitchell
Silberberg &
Knupp LLP

11562145.1

## COUNT I

### Trafficking In Circumvention Devices

36.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 36, as if set forth fully herein.

37.     R6S, including but not limited to its source code and audiovisual game play environments, is a copyrighted work.

38.     Ubisoft has incorporated into R6S technological measures that effectively control access to the game, including access to the dynamic audiovisual elements that comprise the game.

39.     The Cheating Software is comprised of or contains technologies, products, services, devices, components, or parts thereof that primarily are designed or produced for the purpose of circumventing technological measures that effectively control access to Ubisoft's copyrighted work (R6S), and that protect the exclusive rights of the copyright owner (Ubisoft).

40.     The Cheating Software (and the portions thereof that circumvent Ubisoft's anti-cheat technologies) has no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of a copyright owner.

41.     Defendants market the Cheating Software in the United States with knowledge of their use to circumvent Ubisoft's technological access controls and anti-cheat technologies.

42.     As a result of the foregoing, Defendants are offering to the public, providing, importing, or otherwise trafficking in technology that violates 17 U.S.C. § 1201(a)(2).

43.     Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Ubisoft.

44.     Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

45.     Defendants' conduct has caused damage to Ubisoft and has unjustly enriched Defendants, in an amount to be proven at trial.

46.     As a result of Defendants' acts and conduct, Ubisoft has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Ubisoft is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to violate Section 1201 of the DMCA.  Ubisoft is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

47.     As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. § 1203(c), Ubisoft is entitled to Defendant's profits attributable to their violations of 17 U.S.C § 1201.

48.     Alternatively, Ubisoft is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c), in the amount of $25,000 with respect to each violation by Defendants.

49.     Ubisoft further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT II

### Intentional Interference With Contractual Relations

50.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 49, as if set forth fully herein.

51.     As described herein, in order to install and play R6S, licensed users in the United States first must assent to the TOU and Code of Conduct.

52.     Ubisoft's contracts with its users are valid and enforceable.

53.     Each time a purchaser of the Cheating Software uses the Cheating Software in connection with R6S, he or she breaches the TOU and Code of

1    Conduct.  Ubisoft is informed and believes, and on that basis alleges, that

2    thousands of such breaches have taken place by Defendants' customers.

3        54.    Ubisoft is informed and believes, and on that basis alleges, that

4    Defendants are aware of the contracts between Ubisoft and its users in the United

5    States, and additionally are aware of the TOU and Code of Conduct by virtue of

6    their own Ubisoft accounts.  Defendants specifically are aware that the TOU and

7    Code of Conduct prohibit players from using the Cheating Software.  Nevertheless,

8    Defendants intentionally encourage and induce users of R6S to purchase and use

9    the Cheating Software, knowing that the use of these products by their customers is

10   a breach of these customers' contracts with Ubisoft.

11       55.    By inducing Ubisoft's users to breach their contracts with Ubisoft,

12   Defendants have intentionally interfered, and continue to interfere, with the

13   contracts between Ubisoft and its users.

14       56.    As a result of Defendants' actions, Ubisoft has suffered damage in an

15   amount to be proven at trial, including but not limited to a loss of goodwill among

16   users of the Ubisoft Games, diversion of Ubisoft resources to attempt to detect and

17   prevent the use of the Cheating Software, decreased profits, and a loss of profits

18   from users whose accounts Ubisoft has terminated for violation of the TOU and

19   Code of Conduct in the United States.

20       57.    As a further result of Defendants' actions, Defendants have unjustly

21   obtained specifically identifiable property, consisting of all of the proceeds

22   attributable to the sale of the Cheating Software in the United States, and any other

23   products or services that violate any of Ubisoft's rights, and any additional

24   property traceable to those proceeds.  Those proceeds, which are directly

25   attributable to Defendants' manipulation and misuse of R6S and intentional

26   interference with Ubisoft's contracts, rightfully and equitably belong to Ubisoft.

27       58.    Defendants' intentional interference with the contracts between

28   Ubisoft and its licensed users in the United States entitles Ubisoft to injunctive

Mitchell
Silberberg &
Knupp LLP

11562145.1

relief and compensatory damages, the imposition of a constructive trust over Defendants' wrongfully obtained proceeds, and other available relief.

59.     Defendants are guilty of oppression, fraud, or malice, and Ubisoft, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

## COUNT III

## Unfair Competition

60.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 59, as if set forth fully herein.

61.     The acts and conduct of Defendants constitute unfair competition in the United States under California Business & Professions Code § 17200 *et seq.* and under California common law.

62.     As a direct and proximate result of Defendants' unfair competition in the United States, Ubisoft has been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Ubisoft, and an order that Defendants convey to Ubisoft the gross receipts received or to be received that are attributable to the sale of the Cheating Software in the United States.

63.     Defendants are guilty of oppression, fraud or malice, and Ubisoft, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

64.     As a result of Defendants' acts and conduct in the United States, Ubisoft has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Ubisoft is informed and believes, and on that basis avers, that unless enjoined and restrained

Mitchell
Silberberg &
Knupp LLP

11562145.1

18

1   by this Court, Defendants will continue to engage in unfair competition.  Pursuant

2   to California Business & Professions Code § 17203, Ubisoft is entitled to

3   temporary, preliminary and permanent injunctions prohibiting further acts of unfair

4   competition.

5

6                            **<u>PRAYER FOR RELIEF</u>**

7        WHEREFORE, Ubisoft prays that this Court enter judgment in its favor on

8   each and every claim for relief set forth above and award it relief, including but not

9   limited to an order:

10       1.     Preliminarily and permanently enjoining Defendants, their officers,

11  employees, agents, subsidiaries, representatives, distributors, dealers, members,

12  affiliates, and all persons acting in concert or participation with Defendants from:

13  (i) trafficking in circumvention devices in the United States; (ii) intentionally

14  interfering with Ubisoft's contracts with players in the United States; and (iii)

15  engaging in unfair competition in the United States.

16       2.     Requiring Defendants to shut down the Cheating Software and any

17  colorable copies thereof, hosted at any domain, address, location, or ISP.

18       3.     Requiring Defendants to deliver to Ubisoft all copies of materials that

19  infringe or violate any of Ubisoft's rights, as described herein.

20       4.     Requiring Defendants to provide Ubisoft with an accounting of any

21  and all sales of products or services in the United States that infringe or violate any

22  of Ubisoft's rights, as described herein.

23       5.     Requiring Defendants and their officers, servants, employees, agents

24  and any persons who are, or on notice and upon continued provision of services

25  would be, in active concert or participation with them, including but not limited to

26  the domain name registrars and registries administering, holding, listing, or

27  otherwise having control over the domain name <u>muzusoft.net</u> or any other domain

28  name used in conjunction with Defendants' infringing activities to transfer such

Mitchell
Silberberg &
Knupp LLP

11562145.1

1  domain name to Ubisoft's ownership and control, including, *inter alia,* by

2  changing the registrar of record to the registrar of Ubisoft's choosing, unless

3  Ubisoft requests that such domain name be held and/or released rather than

4  transferred.

5        6.    Awarding Ubisoft actual or maximum statutory damages for violation

6  of Section 1201 of the DMCA, as appropriate, pursuant to 17 U.S.C. § 1203(c).

7        7.    Awarding Ubisoft its full costs and attorneys' fees in this action

8  pursuant to 17 U.S.C. § 1203(b) and other applicable laws.

9        8.    Awarding Ubisoft exemplary and punitive damages against

10  Defendants on Ubisoft's cause of action for intentional interference with

11  contractual relations.

12        9.    Awarding Ubisoft restitution of Defendants' unlawful proceeds,

13  including an accounting of any and all sales of the Cheating Software in the United

14  States, and/or any other products or services that violate any of Ubisoft's rights

15  described herein.

16       10.    Imposing a constructive trust over the proceeds unjustly obtained by

17  Defendants through the sales of the Cheating Software in the United States, and/or

18  any other products or services that violate any of Ubisoft's rights described herein.

19       11.    Awarding such other and further relief as this Court may deem just

20  and appropriate.

21

22  DATED: October 23, 2019        MARC E. MAYER

23                               KARIN G. PAGNANELLI
                              MITCHELL SILBERBERG & KNUPP LLP

24

25                            By:  /s/ Marc E. Mayer

26                                 Marc E. Mayer
                               Attorneys for Plaintiff UBISOFT, INC.

27

28

Mitchell
Silberberg &
Knupp LLP

11562145.1